**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

Plaintiff, 3:25-cv-01093 (BKS/ML)

v.

$41,910.00 in U.S. Currency,

Defendant.

**Appearances:**

*For United States of America:*
Adrian LaRochelle
Assistant United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, NY 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff the United States of America commenced this civil forfeiture action via verified complaint for forfeiture in rem against $41,910.00 in U.S. Currency, ("Defendant Currency"), pursuant to 21 U.S.C. § 881(a)(6) as proceeds traceable to violations of 21 U.S.C. § 841, and pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). (Dkt. No. 1). Presently before the Court is the Government's motion for default judgment and for entry of a final order of forfeiture under Rule 55(b) of the Federal Rules of Civil Procedure and General Order #15 of the United States District

Court for the Northern District of New York. (Dkt. No. 10-1). For the reasons that follow, the Government's motion for default judgment is granted.

## II. BACKGROUND

### A. Factual Background

The complaint alleges that law enforcement found the Defendant Currency during an investigation involving narcotic sales. (Dkt. No. 1, ¶¶ 7, 13). In March of 2025, the Binghamton Police Department "received information from a confidential source ('CS') regarding a male named 'Chip' involved in narcotic sales in the Broome County area." (*Id.* ¶ 7). The man "was ultimately identified as Andre Bethea" of Endicott, New York, and "an investigation was initiated." (*Id.* ¶¶ 7-8).

"As part of the investigation, the CS made a controlled purchase" of cocaine from Bethea at his Endicott residence, and the CS confirmed that he "had previously purchased drugs from Bethea at this same residence." (*Id.* ¶ 9). On March 18, 2025, law enforcement obtained a New York State search warrant for Bethea's residence, person, and "any vehicle Bethea is located in." (*Id.* ¶ 10).

"On March 25, 2025, officers observed Bethea in a vehicle that he was known to be associated with, and he was detained and brought back to his residence." (*Id.* ¶ 11). Law enforcement then "executed the state search warrant at Bethea's residence." (*Id.* ¶ 12). Inside the residence, law enforcement found:

> (1) mail in the name of Bethea on the kitchen counter; (2) baking soda; (3) a digital scale; (4) sandwich bags; (5) Mossberg 12-gauge shotgun; (6) a white powdery substance which later tested positive for fentanyl; (7) a grinder; (8) a bag containing a black Beretta Pietro 9mm handgun; (9) miscellaneous ammunition; and (10) U.S. Currency located inside a large safe and on Bethea's person, which total amounts to the Defendant Currency.

(*Id.* ¶ 13). Bethea was subsequently arrested and charged with:

> (1) one count of criminal possession of a controlled substance in the 3rd; (2) one count of criminal use of drug paraphernalia 2nd-package; (3) one count of criminal use of drug paraphernalia 2nd-scale; (4) one count of criminal possession of a weapon 2nd; (5) one count of criminal possession of a weapon 3rd.

(*Id.* ¶ 14). "Bethea had no known legitimate employment" at the time of his arrest. (*Id.* ¶ 15).

### B. Procedural Background

On August 14, 2025, the Government filed its verified complaint for forfeiture in rem. (Dkt. No. 1). That same day, the Clerk of Court issued a warrant for arrest of articles in rem for Defendant Currency. (Dkt. No. 2). The warrant was executed on August 19, 2025. (Dkt. No. 4).

On August 15, 2025, the Government served copies of the verified complaint, warrant for arrest of articles in rem, and notice to potential claimants on Andre Bethea, by certified and regular mail to his attorney, Eric Park, Esq., and the return-receipt was signed for on August 20, 2025. (Dkt. No. 10-2, ¶ 4(a); Dkt. No. 3). Beginning on August 16, 2025, and for thirty consecutive days thereafter, the Government published public notice of this action on an official government forfeiture website, www.forfeiture.gov. (Dkt. No. 10-2, ¶ 5; Dkt. No. 6).

On November 5, 2025, the Government requested an entry of default and submitted a supporting affidavit. (Dkt. Nos. 7; 7-1). On the same day, the Clerk entered default of Defendant Currency. (Dkt. No. 8). The Government filed the instant motion on November 24, 2025. (Dkt. No. 10). No verified claim or answer has been filed in this action, and the last date for potential claimants to file a claim was October 15, 2025. (Dkt. No. 10-2, ¶ 6).

## III. STANDARD OF REVIEW

### A. Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a)

("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1. Second, after a default has been entered against a defendant, and the defendant fails to move to set aside the default under Rule 55(c), the plaintiff must "apply to the court for entry of a default judgment" under Rule 55(b)(2). *Priestley*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b) (amended 2026).[1] "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *United States v. One 2012 Toyota Venza XLE, VIN # 4T3B3BB7CU073918*, No. 19-cv-928, 2020 WL 7407749, at *2, 2020 U.S. Dist. LEXIS 190799, at *4 (N.D.N.Y. Oct. 15, 2020) (citation omitted).

By failing to answer a complaint or oppose a motion for default judgment, a party is deemed to have admitted the well-pleaded factual allegations in the complaint. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *United States v. Two Hundred & Eighty Thousand Dollars & Zero Cents More or Less, in United States Currency*, No. 20-cv-4442, 2021 WL 2980540, at *3, 2021 U.S. Dist. LEXIS 131325, at *6 (E.D.N.Y. July 14, 2021) ("A court considering a motion for default judgment 'deems all the well-pleaded allegations in the pleadings to be admitted[.]'" (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997))). However, "a pleading's legal conclusions are not assumed to be true." *Lelchook v. Islamic Republic of Iran*,

[1] The Court notes that, at the time the Government filed its motion for default judgment, the Local Rules did not require submission of a memorandum of law. N.D.N.Y. L.R. 55.2(b) now reads:

> Prior to filing a motion for default judgment, the party must first obtain a Clerk's Certificate of Entry of Default as required by L.R. 55.1. The motion, pursuant to Fed. R. Civ. P. 55(b)(2), shall include a memorandum of law pursuant to Local Rule 7.1 and a proposed order. The moving party shall also include in its application an affidavit of the moving party or the moving party's attorney setting forth facts as required by L.R. 55.2(a).

393 F. Supp. 3d 261, 265 (E.D.N.Y. 2019) (citation omitted). Before entering default judgment, a court must review the complaint to determine whether the plaintiff has stated a valid claim for relief. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Two Hundred & Eighty Thousand Dollars & Zero Cents More or Less*, 2021 WL 2980540, at *3, 2021 U.S. Dist. LEXIS 131325, at *6. The court "need not agree that the alleged facts constitute a valid cause of action." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also United States v. $73,313.00 in U.S. Currency*, No. 22-cv-612, 2023 WL 1102601, at *2, 2023 U.S. Dist. LEXIS 14866, at *4 (N.D.N.Y. Jan. 30, 2023) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." (quoting *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009))).

**B. Forfeiture in Rem**

"In rem forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," Pub. L. No. 106–185, 114 Stat. 202. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). "The Federal Rules of Civil Procedure also apply to [forfeiture in rem] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-cv- 5567, 2015 WL 5178121, at *4, 2015 U.S. Dist. LEXIS 117692, at *11 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017).

Under Supplemental Rule G, a complaint for forfeiture in rem must:

> (a) be verified;
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
> (c) describe the property with reasonable particularity;
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
> (e) identify the statute under which the forfeiture action is brought; and
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2). Furthermore, "[i]f the defendant is not real property . . . the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. G(3)(b)(i).

Supplemental Rule G(4) sets forth the notice requirements for forfeiture in rem actions: the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days," Supp. R. G(4)(a)(iv)(C).

Once the government has commenced a forfeiture in rem action, a claimant "who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197. The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." *See* 18 U.S.C. § 983(a)(4)(A); *accord* Supp. R. G(5)(a)(ii). "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supp. R. G(5)(b).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

## IV. DISCUSSION

### A. Rule 55

As an initial matter, the Court must determine whether the Government has complied with the procedural requirements for obtaining default judgment under Rule 55 of the Federal Rules of Civil Procedure. On November 5, 2025, the Government requested a clerk's entry of default under Federal Rule of Civil Procedure 55(a) and General Order #15, and the Government submitted an affidavit affirming that (1) "[a]ll known potential claimants were served"; (2) "public notice of this action was published on an official government forfeiture site . . . for thirty consecutive days"; (3) the Government "believes it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants[;] [s]uch potential claimants have failed to plead or otherwise defend the action, as provided by the Supplemental Rules"; (4) "[n]either a verified claim nor an answer have been filed in this action, and the last date for potential claimants to file a claim" had passed; and (5) "no person thought to have an interest in the Defendant Currency is an infant, incompetent, or presently engaged in military service." (Dkt. No. 7-1, ¶¶ 4-8). Thus, on November 5, 2025, the Government received a clerk's entry of default. (Dkt. No. 8). The Government then moved for default judgment and attached the clerk's certificate of entry of default, (Dkt. No. 10-5), a proposed form of default judgment,

(Dkt. No. 10-4), a copy of the pleading to which no response has been made, (Dkt. No. 10-6), and a supporting affidavit. (Dkt. No. 10-2), in satisfaction of Local Rule 55.2. The Government has therefore complied with the procedural requirements of Rule 55 and Local Rule 55.2.

**B. Supplemental Rule G**

Because the Government brings an action for forfeiture in rem, the Court must also examine whether the Government complied with the requirements of the Supplemental Rules. *See Vazquez-Alvarez*, 760 F.3d at 197. In compliance with Supplemental Rule G(3)(b)(i), the Clerk issued a warrant to arrest Defendant Currency. (Dkt. Nos. 2, 4). The record reflects that the Government has sufficiently satisfied the notice requirements of Supplemental Rule G(4). First, the Government published public notice of the action on an official government forfeiture website, www.forfeiture.gov, from August 16, 2025, to September 14, 2025, (Dkt. No. 6; Dkt. No. 10-2, ¶ 5), in satisfaction of Supplemental Rule G(4)(a). Additionally, the Government has satisfied Supplemental Rule G(4)(b) by attempting to provide direct notice to all known potential claimants by means reasonably calculated to reach the potential claimant. *See* Supp. R. G(4)(b). To wit, the Government served copies of the verified complaint, warrant for arrest of articles in rem, and notice to potential claimants on Eric Park, Esq., attorney for Andre Bethea, via certified and regular mail, and the return-receipt was signed on August 20, 2025. (Dkt. No. 10-2, ¶ 4(a); Dkt. No. 3). The Government has asserted that "[a]ll known potential claimants were served" and that "it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants." (Dkt. No. 10-2, ¶¶ 4, 8). This is sufficient to satisfy Supplemental Rule G(4). *See United States v. Starling*, 76 F.4th 92, 96 n.2 (2d Cir. 2023) ("The government need not provide formal service of process in a civil forfeiture proceeding; it must only give notice 'to any person who reasonably appears to be a potential claimant on the facts

known to the government,' and it may do so by any 'means reasonably calculated to reach the potential claimant.'" (quoting Supp. R. G(4)(b)(i), (iii)(A))).

The complaint also satisfies the requirements of Supplemental Rule G(2). It is verified, (Dkt. No. 1, at 1, 5); states the grounds for subject-matter jurisdiction, in rem jurisdiction over Defendant Currency, and venue, (*id.* ¶¶ 4-6); describes the property with reasonable particularity, (*id.* ¶ 2); states Defendant Currency's location when seizure occurred and when the action was filed, (*id.* ¶¶ 13, 3); and identifies the statute under which the forfeiture action is brought, (*id.* at 1). *See* Supplemental Rule G(2).

The verified complaint must also "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *See* Supp. R. G(2)(f). And because the Government's theory of forfeiture is that Defendant Currency was "used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," the Government must "establish that there was a substantial connection between" Defendant Currency and the underlying criminal offenses. *See* 18 U.S.C. § 983(c)(3). Because these questions involve examination of the sufficiency of the facts alleged in the verified complaint, the Court analyzes them together.

### C. Sufficiency of the Verified Complaint

The Government brings its forfeiture in rem action under 21 U.S.C. § 881(a)(6) as "proceeds traceable to" violations of 21 U.S.C. § 841. (Dkt. No. 1, at 1).

Section 881(a)(6) provides for forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance[,] . . . all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). Section 841 provides, in relevant part, that it "shall be

unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a).

Courts in the Second Circuit have held that:

> [w]hen the Government seeks forfeiture, pursuant to 21 U.S.C. § 881(a)(6), on a theory that property constitutes proceeds traceable to an exchange for narcotics, it need not prove that there is a substantial connection between the property and any specific drug transaction. Instead, the Government may prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking.

*United States v. U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*, 455 F. Supp. 2d 145, 149 (E.D.N.Y. 2006) (internal citations omitted), *aff'd sub nom. Escobar v. $185,000.00 U.S. Currency in the Sum of One Hundred Eighty-Five Thousand Dollars More or Less,* 280 F. App'x 36 (2d Cir. 2008). "[T]he recovery of a large amount of cash found at the premises and in close proximity to the drugs and drug paraphernalia" suggests a substantial connection to drug trafficking. *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 251 (S.D.N.Y. 2010). Further, "[k]eeping a large amount of cash in a safe-deposit box . . . is unusual behavior and may give rise to the inference that [the person carrying the cash] was attempting to conceal that currency." *See id.* at 251.[2] "While the mere possession of a large amount of cash is not illegal . . . the suspicion of illegal activity inevitably increases with the amount of money seized because there are so few instances in which an individual will legitimately be found carrying extraordinarily large sums of cash." *U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars*, 455 F. Supp. 2d at 154.

---

[2] The court in *$22,173.00 in U.S. Currency* was careful to note that "[t]his suspicious activity alone, of course, would be insufficient to survive a motion to dismiss." 716 F. Supp. 2d at 251 n.39.

"A great disparity between the amount of cash seized and its carrier's legitimate income[,]" *id.* at 155, and an "inability to explain where the currency came from," *United States v. $32,507.00 in U.S. Currency*, No. 14-cv-5118, 2014 WL 4626005, at *3, 2014 U.S. Dist. LEXIS 132511, at *7 (S.D.N.Y. Sept. 16, 2014), may also create an inference of illegal drug-related activity. *See Escobar*, 280 F. App'x at 37 (affirming grant of forfeiture where carrier of subject currency "had no documented means of making money in the amount he was carrying," "canine sniffs" indicated the money "carried the odor of narcotics," and carrier admitted the money was not his and that he was being paid to deliver it).

Here, evaluating the totality of the circumstances, the Government has alleged sufficient facts to satisfy its burden of proof under 21 U.S.C. § 881(a)(6) and establish that Defendant Currency has a substantial connection to illegal drug-related activity. Defendant Currency was recovered upon execution of a search warrant at Bethea's residence and found in "close proximity to" drugs and drug paraphernalia, which suggests a substantial connection to drug trafficking. *See $22,173.00 in U.S. Currency*, 716 F. Supp. 2d at 251. Additionally, the $41,910 was kept entirely in a safe and on Bethea's person, (*see* Dkt. No. 1, ¶ 13), and keeping that amount of money in a safe (or on one's person) "is unusual behavior" that supports an inference that Bethea was attempting to conceal Defendant Currency. *See $22,173.00 in U.S. Currency*, 716 F. Supp. 2d at 251. And because "Bethea had no known legitimate employment" at the time of his arrest, (Dkt. No. 1, ¶ 15), there is "a great disparity between the amount of cash seized and its carrier's legitimate income," which further supports an inference of illegal activity. *See U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars*, 455 F. Supp. 2d at 155.

The Government has therefore stated sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial, satisfying

Supplemental Rule G(2)(f), and the Government has established a substantial connection between Defendant Currency and the underlying criminal offenses in satisfaction of U.S.C. § 983(c)(3). The Government has established that Defendant Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6) as property that constitutes proceeds traceable to an exchange for narcotics. Accordingly, the Government's motion for default judgment is granted.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Government's motion for default judgment, (Dkt. No. 10-1), is **GRANTED**; and it is further

**ORDERED** that judgment of default be entered against Defendant Currency; and it is further

**ORDERED** that Defendant Currency is hereby forfeited to the United States; and it is further

**ORDERED** that any claims to Defendant Currency are hereby forever barred.

**IT IS SO ORDERED.**

Dated: August 24, 2026
Syracuse, New York

Brenda K Sannes

Brenda K. Sannes
Chief U.S. District Judge